**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 22-234** |
| **TARIK PATTERSON** | **SECTION "O"** |

## ORDER AND REASONS

Before the Court is a Report and Recommendation[1] ("R&R") recommending that (1) Defendant Tarik Patterson ("Patterson") be declared mentally incompetent, with restoration unlikely in the foreseeable future; and that (2) Patterson be committed to the custody of the Attorney General for a period of 45 days to allow the facility director to conduct a more fulsome evaluation to determine whether to issue a certificate of dangerousness under 18 U.S.C. § 4246(a). Patterson filed timely objections[2] to the R&R. Patterson objects, on several statutory and constitutional grounds, to the Magistrate Judge's recommendation that Patterson be committed for 45 days for a further dangerousness evaluation.

The Court has reviewed the R&R, as well as Patterson's objections. The Court has applied relevant legal authorities and made a *de novo* review of those portions of the report or specified proposed findings or recommendations to which Patterson objected. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *Funeral Consumers Alliance, Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 347 (5th Cir. 2012). As for the portions of the R&R to which there is no objection, the Court has reviewed for plain error and verified

---

[1] ECF No. 54.
[2] ECF No. 57.

that the recommendations are legally and factually sound. *Starns v. Andrews*, 524 F.3d 612, 617 (5th Cir. 2008).

For the following reasons, the Court adopts the R&R in part. The Court adopts the R&R as to its recommendation that Defendant should be declared mentally incompetent and that his restoration is unlikely in the foreseeable future under 18 U.S.C. § 4241(d). However, in light of the information received from FMC Butner[3] after the R&R was issued clarifying that its evaluation of Defendant's dangerousness under 18 U.S.C. § 4246(a) was its final and complete assessment and thereby obviating the need for additional assessment, the Court declines to adopt the R&R's recommendation that Defendant return to FMC Butner and be committed for a further 45 days for such assessment.

## I. BACKGROUND

### A. Factual Background

On October 20, 2022, Defendant Tarik Patterson ("Patterson") was indicted by a grand jury for one count of distribution of controlled substances resulting in death, three counts of distribution of controlled substances, two counts of possession with intent to distribute controlled substances, and one count of maintaining a drug-involved premise.[4] After his arraignment, Patterson was remanded into custody.[5] In November 2022, the government filed an unopposed motion to continue the trial, which the Court granted.[6] On March 13, 2023, Patterson moved for a hearing to

[3] ECF No. 61.
[4] ECF No. 11.
[5] ECF No. 15.
[6] ECF Nos. 20, 22.

determine his competency to proceed pursuant to 18 U.S.C. § 4241(a) and for a competency evaluation and report pursuant to 18 U.S.C. § 4241(b).[7] The motion was referred to the assigned Magistrate Judge.[8]

The Magistrate Judge granted the motion and set a hearing date to determine Patterson's competency.[9] After conferring, the parties agreed to stipulate to defense counsel's expert's findings that Patterson was incompetent to proceed to trial and to waive any additional witnesses in a competency hearing.[10] The parties requested the Court make a finding that Patterson was suffering from a mental disease or defect rendering him incompetent such that he is unable to understand the nature and consequences of the proceedings against him or unable to assist properly in his defense.[11] The parties further requested the Court to order Mr. Patterson temporarily committed to the custody of the Attorney General pursuant to 18 U.S.C. §§ 4241(d)(1) and (2)(A) to receive appropriate treatment until his condition improved and trial could proceed.[12]

The Magistrate Judge granted both requests on April 20, 2023, and ordered Patterson's temporary hospitalization pursuant to 18 U.S.C. § 4241(d).[13] It took several months before Patterson was transported to the Federal Medical Center in Butner, North Carolina ("FMC Butner") for a mental evaluation.[14] During that time,

[7] ECF No. 24.

[8] ECF Nos. 26. This matter was originally allotted to Section M of this Court, but transferred to Section O in February 2024.

[9] ECF No. 30.

[10] ECF No. 34.

[11] *Id.* at 3.

[12] *Id.*

[13] ECF No. 35.

[14] ECF No. 59-2 at 1.

Patterson remained in pre-trial custody in Plaquemines Parish Jail.[15] He was finally admitted to FMC Butner on February 13, 2024.[16]

The Court received a June 4, 2024, Forensic Evaluation report on Patterson's condition from Dr. Allyson Sharf, Ph.D., forensic psychologist at the Mental Health Department of the Federal Medical Center at Butner, North Carolina ("FMC Butner").[17] The cover letter attaching and adopting the report was signed by B. Lott, Acting Warden of FMC Butner.[18] The report stated that Mr. Patterson was not competent to stand trial but that, with medication adjustment and ongoing restoration efforts, there was a substantial likelihood that Patterson would be restored to competency in the future.[19] The report explained that Patterson was cooperating in efforts to restore him to competency and was voluntarily adhering to a medication regiment and participating in competency restoration groups.[20]

The Magistrate Judge granted the request for an additional 120 days of restorative treatment and evaluation pursuant to Section 4241(d)(2).[21] Two subsequent reports similarly explained that although Patterson was improving, he was still not competent to stand trial, but that there was a substantial likelihood he would be restored to competency in the future.[22] The Magistrate Judge accordingly

---

[15] *Id.*
[16] *Id.*
[17] ECF No. 39-1.
[18] *Id.* at 1.
[19] *Id.* at 10.
[20] *Id.* at 5-6.
[21] ECF No. 40.
[22] *See* ECF No. 42-1 at 10 (Oct. 2, 2024 report); ECF No. 44-1 at 10 (February 26, 2025 report).

granted two further requests for an additional 120 days of restorative treatment and evaluation pursuant to Section 4241(d)(2).[23]

On July 8, 2025, the Court received a final Forensic Evaluation report on Mr. Patterson's condition from Dr. Sharf at FMC Butner, with a cover letter adopting the report signed by B. Lott, Acting Warden of FMC Butner.[24] After recounting Patterson's medical history, schizophrenia symptoms, and treatments, the report explained that any benefit Patterson was receiving from medication has "plateaued."[25] The report concluded that even with "consistent medication adherence and multiple medication adjustments," Patterson's symptoms of psychosis are such that "there is not a substantial likelihood that Mr. Patterson will improve to such an extent that his competency to proceed may be restored in the foreseeable future."[26]

The penultimate page of the report briefly discussed the question of Mr. Patterson's dangerousness and potential for civil commitment under 18 U.S.C. § 4241(d).[27] The report explained that a "review of Mr. Patterson's suitability for civil commitment pursuant to § 4246 was completed on 07/07/25."[28] The report indicated that "consultants" with FMC Butner had performed the "review of Mr. Patterson's suitability for civil commitment" and assessed that a Section 4246(a) certificate of dangerousness was "not recommended."[29] According to the report, FMC Butner used

---

[23] ECF Nos. 43, 45.
[24] ECF No. 48-3.
[25] *Id.* at 9.
[26] *Id.*
[27] *Id.* at 10.
[28] *Id.* at 9.
[29] *Id.* at 10.

the "Historical, Clinical, and Risk Management 20-Version 3 (HCR-20-V3)" to consider Patterson's "potential risk and protective factors."[30] The report did not list the factors or discuss the relevant considerations for these factors.[31]

The report contained only two paragraphs of analysis discussing Patterson's symptoms and risks relevant to the dangerousness evaluation:

> With regard to historical factors, the following risk factors were present: limited history of violence to include one altercation while incarcerated in which Mr. Patterson was the only known injured person, history of engaging in antisocial behavior, problems with employment, substance use, major mental disorder namely schizophrenia, and problems with treatment supervision or response. Mr. Patterson does not have a history of problems with relationships, personality disorder, exposure to traumatic experiences, or violent attitudes so these items were scored as absent. In a review of the information presented, there is no meaningful history of violence to meet the threshold for civil commitment.
>
> Regarding clinical factors, Mr. Patterson continues to present with limited insight into his mental illness. While his symptoms of mental illness have improved with treatment, delusional ideation persists such that symptoms of mental illness remain partially problematic. He has not evidenced ideation, instability, or problems with treatment in the last six months while housed at FMC Butner so these items were scored as absent.[32]

The report ultimately concluded:

> While the determination of Mr. Patterson's dangerousness is ultimately a decision for the Court, the consultants opine he does not meet threshold criteria for civil commitment. It is not recommended for a certificate of dangerousness to be filed in this case. This consultation is based on information available at the time of the risk panel.[33]

Following receipt of the July 8, 2025, Forensic Evaluation of Patterson, the assigned Magistrate Judge to whom the matter had been referred requested further

---

30 *Id.*
31 *Id.*
32 *Id.*
33 *Id.*

briefing from the parties regarding whether there was a "need for an order for a more fulsome risk assessment of dangerousness under 18 U.S.C. § 4246(b)."[34] The parties filed briefs discussing whether the Court had the authority to order Patterson to return to FMC Butner for an additional evaluation on dangerousness as requested by the Government.[35] The Government argued that FMC Butner's July 8, 2025 report was inadequate because it contained numerous inconsistencies and insufficient analysis, particularly regarding its discussion of Patterson's previous violent episodes.[36] It contended that the Court has the authority under Section 4246 to order Patterson's return to FMC Butner for an additional evaluation of dangerousness because the provisions of that statute "only come into play after the district court judge determines that the defendant is not competent to stand trial and that his competency is not likely to be restored in the foreseeable future."[37]

Patterson argued that "further evaluation under § 4246 is not authorized under the plain text of the statute," because "Section 4246(a) establishes the director's certification as a necessary prerequisite to a dangerousness hearing[.]"[38] Thus, because the director declined to issue Patterson a certificate of dangerousness, "this Court does not have the authority to order another psychological examination" and "continued detention would violate Mr. Patterson's due process rights."[39] Patterson

---

[34] ECF No. 47.
[35] ECF Nos. 51, 53.
[36] ECF No. 53.
[37] *Id.* at 5.
[38] ECF No. 51 at 6.
[39] *Id.* at 7.

asserted that the statute requires his release and that the indictment must therefore be dismissed.[40]

The Magistrate Judge issued a Report & Recommendation[41] recommending that (1) Patterson be declared mentally incompetent, with restoration unlikely in the foreseeable future; and (2) Patterson be committed to the custody of the Attorney General for a period of 45 days to allow the facility director to conduct a more fulsome evaluation as to whether to issue a certificate of dangerousness under 18 U.S.C. § 4246(a). The Magistrate Judge rejected Patterson's due process argument, finding that "[a]s long as the court complies with the procedural requirements of §§ 4241(d) and 4246(a), the defendant's due process rights are not violated."[42] The R&R also found that the statutory scheme of Sections 4241 and 4246, and relevant caselaw interpreting those statutes, permitted the Court to order Patterson's return to FMC Butner for a "full and complete" evaluation for dangerousness.[43] Patterson filed timely objections[44] to the R&R, objecting on several grounds to the Magistrate Judge's recommendation that Patterson be committed for an additional 45 days for an additional dangerousness evaluation.

Following a status conference with the parties, on October 8, 2025, this Court issued an order[45] directing FMC Butner to supplement the July 8, 2025, forensic evaluation of Patterson. The Court ordered FMC Butner to respond to certain

---

[40] *Id.* at 8.
[41] ECF No. 54.
[42] *Id.* at 5.
[43] *Id.* at 9-10.
[44] ECF No. 57.
[45] ECF No. 60.

certified questions to clarify the report's conclusion as to Patterson's dangerousness in light of the report's brevity and inconsistencies. For example, the Court noted the report confusingly states that "determination of Mr. Paterson's dangerousness is ultimately a decision for the Court,"[46] explaining that "the court cannot hold a dangerousness hearing or make a determination as to the necessity of civil commitment" without a certificate of dangerousness from the director.[47] Additionally, the Court highlighted the report's acknowledgment of certain prior violent episodes of Patterson, which contrasted with the report's ultimate determination that Patterson does not have a "meaningful history of violence."[48] Accordingly, the Court certified the following questions to FMC Butner:

1. Has the director of FMC Butner concluded his analysis of Mr. Patterson's dangerousness under § 4246 such that this report must be considered his final determination, rather than a mere "recommend[ation]" for the Court's "ultimate[] [] decision," that the director has declined to certify Mr. Patterson for a civil commitment hearing?

2. Two psychologists provided a "risk consultation screening" of Mr. Patterson at Dr. Sharf's request. The report states that "Dr. Sharf presented Mr. Patterson's background and discussed potential risk and protective factors." According to the report, "Psychology Data System (PDS) records and the electronic central file" were reviewed, and the "Historical, Clinical, and Risk Management 20-Version 3 (HCR-20-V3)" was used. The report does not contain further explanation or detail regarding these diagnostic tools or standards.

   With that in mind, please describe the criteria the facility uses to determine whether the release of a person deemed incompetent and unrestorable presents "a substantial risk of bodily injury to another person or serious damage to property

[46] ECF No. 48-3 at 10.
[47] ECF No. 60 at 3.
[48] *Id.* at 4-5.

of another," and whether each of these criteria was used in the assessment of Mr. Patterson.

3. Were the three violent episodes involving Mr. Patterson, discussed above, considered in connection with FMC Butner's dangerousness assessment? If so, how were they considered?

4. Was the evidence of probable cause to arrest Mr. Patterson for alleged distribution of controlled substance, resulting in the death of another, considered in the dangerousness assessment? If so, how was it considered?[49]

The Court ordered the institution to respond to the Court with written answers by October 23, 2025, and likewise ordered that Patterson not be returned to FMC Butner in connection with the institution's preparation of its response to the order.[50]

On October 23, 2025, the Court received a letter response to its certified questions from B. Lott, Acting Warden of FMC Butner (the "Warden").[51] The Warden first clarified his answer to the Court's foremost question, explaining: "yes, FMC Butner has concluded its [dangerousness] analysis of Mr. Patterson[]" and FMC Butner "do[es] not presently intend to certify Mr. Patterson as mentally ill and dangerous in the United States District Court for the Eastern District of North Carolina."[52]

As to the remaining three questions, the Warden clarified that Patterson's "criminal history, including both violent and non-violent acts, were considered as part of the analysis under the . . . HCR-20," which is a "comprehensive set of professional

---

[49] *Id.* at 6-7.
[50] *Id.* at 7.
[51] ECF No. 61.
[52] *Id.*at 1.

guidelines for the assessment and management of violence risk that embodies the structured professional judgment model."[53] The Warden described the process for convening a "Risk Consultation Panel" to assess the relevant clinical factors to evaluate whether a defendant is dangerous.[54] The Warden confirmed that the Risk Consultation Panel evaluated Patterson's alleged federal offense and history of violent episodes as part of its assessment.[55] Finally, the Warden assured the Court that FMC Butner "takes this responsibility very seriously" and that the Warden "ha[s] no concerns about [the Panel's] assessment of Mr. Patterson's risk at this time. Thus, a Certificate of Dangerousness will not be issued in this matter."[56]

### B. Statutory Background

The procedures for a defendant suffering from a "mental disease or defect" are covered under 18 U.S.C. § 4241 *et seq.* Under Section 4241(a), "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," the Court must hold a hearing regarding the defendant's competency. Prior to the hearing, the Court may order a psychiatric evaluation of the defendant. *Id.* § 4241(b)-(c).

Following the hearing, if the Court finds "by a preponderance of the evidence" that the defendant is incompetent to stand trial, the Court "shall commit the

[53] *Id.*
[54] *Id.* at 2.
[55] *Id.*
[56] *Id.* at 1-2.

defendant to the custody of the Attorney General" for hospitalization and treatment. *Id.* § 4241(d). The statute instructs that the defendant shall be hospitalized:

> (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and
>
> (2) for an additional reasonable period of time until—
>
> (A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or
>
> (B) the pending charges against him are disposed of according to law; whichever is earlier.

When a defendant cannot be restored to competency and a trial cannot proceed, "at the end of the time period specified" the defendant becomes then "subject to the provisions of sections 4246 and 4248." *Id.* Section 4246 governs the "[h]ospitalization of a person due for release but suffering from a mental disease or defect"—that is, civil commitment and its prerequisite procedures. [57] The statute authorizes the civil commitment of a defendant who is "suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." *Id.* § 4246(d).

The initial authority to begin a civil commitment proceeding—which ultimately culminates in a hearing before the court in the district in which the

---

[57] Section 4248 involves the civil commitment of a sexually dangerous person and is not relevant to the instant case.

defendant is hospitalized—rests with the "director of [the] facility in which [the defendant" is hospitalized:

> If the director of a facility in which a person is hospitalized certifies that a person . . .who has been committed to the custody of the Attorney General pursuant to section 4241(d). . . is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another . . . he shall transmit the certificate to the clerk of the court for the district in which the person is confined.

*Id.* § 4246(a). Thus, if the director of the facility issues such a certificate of "dangerousness,"[58] the court in the district in which the defendant is hospitalized then "shall order a hearing to determine whether the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another." *Id.* Also, "[p]rior to the date of the [civil commitment] hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted[.]" *Id.* § 4246(b). Following issuance of a certificate of dangerousness and subsequent hearing, the court must find there is "clear and convincing evidence" of this substantial risk of dangerousness for the person to be civilly committed. *Id.* § 4246(d). Importantly, it is the director's issuance of a certificate of dangerousness that "stay[s] the release of the person pending completion of procedures contained in this section." *Id.* § 4246(a).

[58] Though the statute does not use the word "dangerous," courts have colloquially used the terms "certificate of dangerousness" and "dangerousness hearing." *See, e.g.*, *United States v. Bonin*, 541 F.3d 399, 400-01 (5th Cir. 2008).

## II. ANALYSIS

### A. 18 U.S.C. § 4241 - Competency to Stand Trial

Neither party objected to the R&R's recommendation, per the parties' joint stipulation,[59] that Patterson be declared mentally incompetent and that his restoration is unlikely in the foreseeable future under Section 4241(d).[60] The Court accordingly reviews that portion of the R&R for plain error. *Starns v. Andrews*, 524 F.3d 612, 617 (5th Cir. 2008). Finding no plain error, the Court adopts this section of the R&R as its opinion and finds Patterson mentally incompetent with restoration unlikely in the foreseeable future under Section 4241.

### B. 18 U.S.C. § 4246 - Dangerousness Evaluation

Once a defendant is deemed incurably incompetent under 18 U.S.C. § 4241(d), the "director of [the] facility in which [the] person is hospitalized" must decide whether to certify that the defendant's release "would create a substantial risk of bodily injury to another person or serious damage to property of another"—that is, whether to issue a certificate of dangerousness. 18 U.S.C. § 4246(a). If the director issues such a certificate, the court in the district in which the defendant is hospitalized—here, North Carolina—then "shall order a hearing to determine whether the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another." *Id.* That court must find there is "clear

[59] ECF No. 34.
[60] ECF No. 54 at 3, 10.

and convincing evidence" of this substantial risk of dangerousness for the person to be civilly committed. *Id.* § 4246(d).

According to the plain text of the statute, it is the decision of the "director of [the] facility in which [the] person is hospitalized," and his decision alone, whether to certify the defendant as dangerous and thereby enable the court in that district to hold a civil commitment hearing. *See id.* § 4246(a) ("If the director of a facility in which a person is hospitalized certifies" the defendant as dangerous, "he shall transmit the certificate to the clerk of the court for the district in which the person is confined.").

In Patterson's case, the director of FMC Butner—here, the Warden—submitted a supplemental letter[61] after the R&R was issued that explains the criteria and procedures used to assess Patterson's dangerousness. The Warden's letter clarifies that Patterson's "criminal history, including both violent and non-violent acts, were considered as part of the analysis under the . . . HCR-20," and confirms that the "Risk Consultation Panel" evaluated Patterson's alleged federal offense and history of violent episodes as part of its assessment.[62] It notes that the members of the Risk Consultation Panel "make[] each decision with an understanding not only of what is at stake for the community, but for their professional ethics and licenses as well" and that the Warden "trust[s] the assessment, judgment, and advice of the forensic psychologists in [his] employ."[63]

[61] ECF No. 61.
[62] *Id.* at 1.
[63] *Id.* at 2.

Most importantly, the Warden's letter clarifies that, in spite of language in the July 8, 2025 report couching the dangerousness certificate decision as a "recommend[ation]" that is "ultimately a decision for the Court,"[64] the Warden is, in fact, expressly declining to issue a certificate of dangerousness for Patterson. *See* Warden FMC Butner Letter, ECF No. 61 at 1, 3 ("[Y]es, FMC Butner has concluded its [dangerousness] analysis" and FMC Butner "do[es] not presently intend to certify Mr. Patterson as mentally ill and dangerous in the United States District Court for the Eastern District of North Carolina. . . I have no concerns about [the Panel's] assessment of Mr. Patterson's risk at this time. Thus, a Certificate of Dangerousness will not be issued in this matter."). Accordingly, the Warden has declined to "transmit the certificate" of dangerousness to the district court in North Carolina—*i.e.*, the "district in which [Patterson was] confined"—and thus, there were no copies of the certificate to send "to the clerk of the court that ordered the commitment"—*i.e.*, this Court. *See* 18 U.S.C. § 4246(a).

In the absence of a certificate of dangerousness, the district court in North Carolina cannot hold a Section 4246(d) dangerousness hearing to determine if Patterson should be civilly committed. *See United States v. Bonin*, 541 F.3d 399, 401 (5th Cir. 2008) ("Section 4246(a) establishes the director's certification as a necessary prerequisite to a dangerousness hearing; without the certification, a court ordinarily lacks statutory authority to conduct the hearing."); *Sealed Appellee v. Sealed Appellant*, 802 F. App'x 138, 142 (5th Cir. 2020) ("Indeed, the government could not

---

initiate the commitment proceedings under § 4246 until it obtained a certificate of dangerousness."). And the plain text of the statute does not vest this Court with the authority to order a second opinion on the certificate of dangerousness determination, or order a civil commitment hearing, where the Warden has declined to issue a certificate. *See* 18 U.S.C. § 4246.

So with the benefit of additional clarifying information in the form of the October 23, 2025, letter from the Warden of FMC Butner,[65] which the Court received after the Magistrate Judge issued the R&R, the Court declines to follow the R&R's recommendation that Patterson return to FMC Butner for a "full and complete"[66] dangerousness evaluation. In light of the Warden's express confirmation that "as Acting Warden of FMC Butner," and "the final decision-maker," he has decided that "a Certificate of Dangerousness will not be issued in this matter" and that he has "no concerns about [the Risk Panel's] assessment of Mr. Patterson's risk at this time," the Court is satisfied that FMC Butner has fulfilled its obligation to perform a dangerousness evaluation of Patterson under Section 4246(a).[67]

---

[65] ECF No. 61.

[66] ECF No. 54 at 9.

[67] It appears to be more common practice for the facility to first return the defendant to the district in which he is charged so that court can rule on the question of the defendant's competency, then, second, for the court to order the defendant's return to the facility so the facility can assess dangerousness. *See, e.g., Sealed Appellee v. Sealed Appellant*, 83 F.4th 399, 402 (5th Cir. 2023); *Sealed Appellee*, 802 F. App'x at, 142; *Bonin*, 541 F.3d at 401. But there is nothing in the plain text of the statute or caselaw that *requires* the court to rule on competency before the facility performs the Section 4246(a) dangerousness evaluation once the facility has determined the defendant is unrestorable. Section 4246(a) governs "a person in the custody of the Bureau of Prisons . . . who has been committed to the custody of the Attorney General pursuant to section 4241(d)"—not a person who has been found incompetent by a Court. 18 U.S.C. § 4246(a). Patterson was a person committed to the custody of the BOP under Section 4241(d). Consistent with the statute and during that commitment, after FMC Butner determined that he was unrestorable, FMC Butner then made a determination that a Section 4246(a) certificate was not warranted—eliminating the likely delays involved in sending the defendant back and forth between this district and North Carolina.

Finally, the Court acknowledges that because the Warden expressly declined to issue a certificate of dangerousness, the Court has no further authority to continue to "stay the release" of Patterson. 18 U.S.C. § 4246(a) ("A certificate filed under this subsection shall stay the release of the person pending completion of procedures contained in this section."); *United States v. Ceasar*, 30 F.4th 497, 500 (5th Cir. 2022) ("At the end of the commitment period, if the defendant has not sufficiently improved, he is not subject to any additional commitment except by way of the civil commitment procedures described in 18 U.S.C. §§ 4246 and 4248."); *United States v. Wood*, 469 F.2d 676, 677 (5th Cir. 1972) (holding that if the defendant is unrestorable "he must be released or granted a hearing pursuant to 18 U.S.C. § 4247"); *United States v. Baker*, 2010 WL 1742222, at *3 (W.D. Ark. Apr. 29, 2010) ("While the statute is silent as to precisely what course of action is to be taken if a 'certificate of dangerousness' be not issued, the Court believes it is fairly to be inferred from the language of the statute that, in the absence of the same, the defendant must be released."). Thus, the Government will be ordered to dismiss the indictment or to show cause as to why the indictment should not be dismissed.

Accordingly,

**IT IS ORDERED** that the R&R[68] is **ADOPTED** as to the determination that the Defendant is incompetent and unrestorable pursuant to 18 U.S.C. § 4241;

---

[68] ECF No. 54.

**IT IS FURTHER ORDERED** that, in light of the supplemental letter[69] filed by the Acting Warden of FMC Butner, the defendant's objection[70] to the portion of the R&R[71] ordering his return to FMC Butner for further evaluation is **SUSTAINED;**

**IT IS FURTHER ORDERED** that, by October 31, 2025, the Government must move to dismiss the indictment or show cause as to why the indictment should not be dismissed;

**IT IS FURTHER ORDERED** that, by November 7, 2025, either party may file a motion showing cause as to why ECF Nos. 49, 51, 52, 53, 57, 59, and 60 (and any attachments thereto) must remain under seal; or, should a party believe that good cause exists to keep certain portions of those records (but not the entirety of the records) under seal, they must file with the Court a motion identifying the specific portions of those records that the party seeks to have redacted from the public record. If the Court receives no request to seal by November 7, 2025, the records will be unsealed in full.

New Orleans, Louisiana, this 27th day of October, 2025.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

[69] *Id.*
[70] ECF No. 57.
[71] ECF No. 54.